UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| *IN RE PIKEVILLE SCHOOL BUS COLLISION CASES* | Civil Nos. 11-158-ART; 11-159-ART <br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendant State Farm Mutual Automobile Insurance Company removed these two cases to federal court on the basis of diversity jurisdiction. But State Farm waited more than one year from the commencement of the action to do so. Therefore, 28 U.S.C. § 1446(b) bars removal of these cases, and the Court must remand them back to state court.

## BACKGROUND

At one time or another, every driver has faced a sea of red brake lights when traffic enters a school zone. Usually, these collective slowdowns occur without incident because the drivers have enough time to brake and avoid a collision. Even if drivers cannot avoid a collision, minor rear-end collisions are the norm.

Tragically, this case falls outside the norm. Kendall Slusher was driving a three-axle dump truck on U.S. Highway 460 on March 22, 2010, when he saw traffic slowing down in front of him. Corr. Resp., No. 11-158, R. 9 at 1; No. 11-159, R. 7 at 1–2. But he did not know that the reason for the collective slow down was an upcoming school zone. *Id.* When he realized that he could not avoid a collision, Slusher did what came naturally: he applied

the emergency brake. *Id.* at 2. In hindsight, this was not a good idea. It caused him to lose control of the dump truck. *Id.* The truck spun clockwise across the center line and into oncoming traffic, striking a Pike County Board of Education school bus full of children. *Id.*

As with most accidents of this magnitude, temporary chaos ensues afterward, and the resulting lawsuits were not immune from this chaos. On September 24, 2010, the school bus driver, Peggy Childers, and many of the injured children (through next friends) filed a complaint in Pike Circuit Court against Slusher, his employer Kenny Belcher Trucking Company, the Pike County Board of Education, and these plaintiffs' underinsured motorist carriers: Princeton Excess and Surplus Lines Insurance Company, West American Insurance Company, Hartford Accident and Indemnity Company, and Kentucky Farm Bureau Mutual Insurance Company. *See* Compl., No. 11-158, R. 5-1; No. 11-159, R. 5-1. Meanwhile, other children brought another lawsuit in Pike Circuit Court. *See Bowling, et al. v. Belcher, et al.*, No. 10-CI-00568 (Pike Cir. Ct.). The Pike Circuit Court consolidated this latter lawsuit with the first one, and the consolidated suit maintained the same docket number as Childers's lawsuit. Order, No. 11-158, R. 1-3 at 102; No. 11-159, R. 1-3 at 102.

But even this consolidated action did not consist of all the plaintiffs and defendants. On October 4, 2010, plaintiffs J.E., K.E., L.H., C.H., and C.H. moved to intervene in the consolidated action and add State Farm—their underinsured motorist carrier—as a defendant to the consolidated action. Mot. to Intervene, No 11-158, R. 1-3 at 1–3; No. 11-159, R. 1-3 at 1–3. On October 13, 2010, the Pike Circuit Court granted the motion to intervene and docketed the intervening complaint. Order, No. 11-158, R. 1-3 at 108; No. 11-159, R. 1-3 at 108.

After nearly a year in discovery, the parties developed, and the court approved, a procedure to adjudicate these cases efficiently. Corr. Resp., No. 11-158, R. 9 at 2–3; No. 11-159, R. 7 at 2–3. Because Slusher and his employer Belcher Trucking were common defendants as to all of the plaintiffs' claims, but the plaintiffs had different underinsurance providers, the plaintiffs agreed to binding arbitration of their claims against the common defendants. *Id.* at 2–3. The arbitration process would divide up the insurance policy limits of the common defendants among the plaintiffs according to severity of each plaintiff's injuries. *Id.* at 3. The payment of this arbitration award would trigger several events. *Id.* First, the parties agreed that payment of the arbitration award would result in the dismissal of Slusher and Belcher Trucking from the consolidated action, leaving only the plaintiffs' underinsurance carriers as defendants. *Id.* Second, the consolidated action would be severed into separate actions with each group of plaintiffs having a cause of action against his or her underinsured motorist carrier. *Id.* For example, one of the severed cases would involve the intervening plaintiffs J.E. and K.E against State Farm and another case would involve the intervening plaintiffs C.H. and C.H. against State Farm.

With this procedure established, the Pikeville Circuit Court ordered the consolidated action to arbitration on August 8, 2011. Order, R. 11-158, R. 1-3 at 43; R. 11-159, R. 1-3 at 43. The arbitrator filed her recommendations on September 16, 2011, which she amended eleven days later. R. 11-158, R. 9-3; R. 11-159, R. 7-3. For its part, State Farm then informed the plaintiffs that it would not pursue its subrogation rights with respect to the arbitration award, leaving the plaintiffs free to collect the amounts due under the arbitration award. Corr. Resp., No. 11-158, R. 9 at 3–4; No. 11-159, R. 7 at 3–4.

Although the Pikeville Circuit Court had not yet dismissed the common defendants or severed the consolidated cases, State Farm wanted to remove two of the soon-to-be-separate cases to federal court. So it did exactly that. On October 12, 2011, it filed two notices of removal: one with respect to plaintiffs J.E. and K.E., No. 11-158, R. 1, and another with respect to plaintiffs C.H. and K.H., No. 11-159, R. 1. Less than thirty days later, the plaintiffs in each removed case, who are represented by the same attorney, filed motions to remand these cases back to state court. No. 11-158, R. 5; No. 11-159, R. 4. Because these two removed actions stem from the same consolidated state court action, the notices of removal were filed on the same day, and the pleadings are identical except for the parties' identities, the Court will address both cases in this Order.

## DISCUSSION

**I.  These cases must be remanded because State Farm did not remove them within one year of the commencement of the state court action.**

Because the state court action was commenced on September 24, 2010, and State Farm waited over one year to file its notices of removal on October 12, 2011, the Court must remand these cases. In a case that is not initially removable, the case may not be removed on the basis of diversity jurisdiction "more than 1 year after commencement of the action." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (quoting 28 U.S.C. § 1446(b)). Here, it is clear that the state court case was not initially removable. At the time, the parties were not completely diverse because defendants Slusher, Belcher Trucking, and Kentucky Farm Bureau, as well as most of the plaintiffs, were citizens of Kentucky. Compl., No. 11-158, R. 5-1 ¶¶ 1–7, 12; No. 11-159, R. 5-1 ¶¶ 1–7, 12. In addition, because defendants Slusher, Belcher Trucking, and Kentucky Farm Bureau were

"citizen[s] of the State in which [the] action is brought," the resident defendant exception prohibited the case from being removed. 28 U.S.C. § 1441(b). Therefore, the one-year limit applies and the Court must remand these cases if more than one year has passed between "commencement of the action" and October 12, 2011, the date State Farm filed its notice of removal. 28 U.S.C. § 1446(b).

The Sixth Circuit has not yet interpreted the phrase "commencement of the action." But it has suggested, as a threshold matter, that the phrase derives its meaning from federal, not state, law. *See Brierly*, 184 F.3d at 534 (applying the definition of "commencement of the action" found in Fed. R. Civ. P. 3 to determine when the one-year clock began in a diversity action); *accord Norman v. Sundance Spas, Inc.*, 844 F. Supp. 355, 357 (W.D. Ky. 1994) (referring to federal law as the source for the definition of "commencement of the action"). *But see Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (joining other courts of appeals in concluding that state law determines when an action is "commenced" under the Class Action Fairness Act); *Cannon v. Kroger Co.*, 837 F.2d 660, 664 (4th Cir. 1988) ("It is clear that a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court . . . ."). Ultimately, it does not matter whether the Court relies on federal or state law to interpret "commencement of the action" because applying the Federal Rules of Civil Procedure and Kentucky Rules of Civil Procedure yield the same result in this case. *Compare* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.") *with* Ky. R. Civ. P. 3.01 ("A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."). The parties do not contend otherwise.

The question before the Court is whether, by intervening in an existing civil action and adding a new defendant, plaintiffs "commence" a new civil action for purposes of a jurisdictional statute. They do not. Consequently, the one-year clock in § 1446(b) starts to tick when the original complaint is filed, and this time limit does not reset for later-added defendants.

As with any legal text, interpretation begins with the plain language of the statute. The removal statutes use the term "action" interchangeably with "civil action," but do not define either term. Historical usage indicates that "action" and "suit" both referred to entire proceedings or cases. *See, e.g.,* Black's Law Dictionary (9th ed. 2009) (third definition of "claim") ("A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint *in a civil action* specifying what relief the plaintiff asks for.") (emphasis added). The only difference was their context: "action" referred to proceedings in courts of law and "suit" referred to proceedings in courts of equity. Black's Law Dictionary (9th ed. 2009) (fourth definition of "action") (citing Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3 (2d ed. 1899)); *see also* Fed. R. Civ. P. 1, Notes of Advisory Committee on Rules—1966 Amendment (referring to the "elimination of a distinction between actions at law and suits in equity"). The removal statutes employ this same understanding of the term "civil action." The removal statutes only permit removal of entire "civil actions" that are based on diversity jurisdiction; defendants are not allowed to remove pieces of a state court case or abandon un-consenting defendants in state court. *See generally* 28 U.S.C. § 1441. So it stands to reason that a subset of claims between an intervening plaintiff and one of many defendants cannot qualify as an "action" because these claims are only a piece of the entire state court proceeding.

If it were otherwise—if an intervening plaintiff's claims against a later-added defendant qualified as a new "civil action"—then the plain language of § 1441 would permit the defendant to remove only the intervening plaintiff's claims and leave the rest of the claims, defendants, and plaintiffs behind in state court. But this possibility would contradict the longstanding prohibition on piecemeal removal of cases. *See* Wright & Miller, Federal Practice & Procedure § 3722.3 (4th ed. 2011) (explaining how Congress previously endorsed piecemeal removal under the 1866 Separable Controversy Act, but the ensuing "confusion and embarrassment, as well as increase in cost of litigation" led Congress to "put an end" to piecemeal removal by adopting § 1441(c), which governed both diversity and federal question cases until 1990); *see also Wilson v. Lowe's Home Ctr., Inc.*, 401 F. Supp. 2d 186, 196–97 (D. Conn. 2005) (same); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2009) (explaining the rule that all defendants must consent to removal, thus prohibiting a single defendant from removing only part of a case).

The same interpretation of "commencement of an action" can be reached by examining the procedural mechanism of intervention. By intervening in an existing proceeding, a party does not create a new action, but only "voluntarily enters a *pending lawsuit* because of a personal stake in it." Black's Law Dictionary (9th ed. 2009) (definition of "intervenor") (emphasis added). Judicial practice confirms this relationship between intervention and the commencement of an action. Indeed, one need only look at the docket sheet for the consolidated state action below to come to this conclusion. When the Pike Circuit Court permitted J.E., K.E., C.H., and C.H. to intervene, the court did not issue a new civil action number for the case. The intervening plaintiffs were simply added to existing civil action number 10-CI-01494. *Accord U.S. Airways, Inc. v. PMA Capital Ins. Co.*, 340 F.

Supp. 2d 699, 706 (E.D. Va. 2004) (Ellis, J.) ("When additional defendants are joined, no second action is commenced and no new case number is assigned; rather, the action is then pending as to the joined defendants in addition to those parties already defendants. In sum, . . . an action commences only once.").

Furthermore, the time limit in § 1446(b) does not distinguish between defendants named in the original complaint and later-added defendants. It would have been easy for Congress to do so: § 1446(b) could have said that "a case may not be removed on the basis of [diversity jurisdiction] more than 1 year after the commencement of the action *against that party*." *Sasser v. Ford Motor Co.*, 126 F. Supp. 2d 1333, 1336 (M.D. Ala. 2001); *accord U.S. Airways, Inc.*, 340 F. Supp. 2d at 706 n.8 ("If Congress had intended that a separate and distinct one year removal limit would commence to run upon the joining of any additional defendant, it would have written the statute to read that diversity cases are barred from removal more than one year after commencement of the action *against each defendant*."). Congress's decision not to make such a distinction strongly suggests that the one-year time limit starts at the same time for both originally named defendants and later-added defendants. And State Farm does not offer any reason to support performing judicial surgery on the clear language in § 1446(b).

Unsurprisingly, nearly every other court to interpret this phrase in § 1446(b) has also come to the same conclusion regardless of whether the courts ultimately based their decisions on state or federal law. *See, e.g., First Merchants Trust Co. v. Wal-Mart Stores East, LP*, 630 F. Supp. 2d 964, 969–70 (S.D. Ind. 2008) (holding that the plain meaning of § 1446(b) does not give later-added defendants their own one-year time limit); *U.S. Airways, Inc.*, 340 F. Supp. 2d at 704–07 (rejecting argument that one-year time limit does not begin

to run against later-added defendant until that defendant is joined); *Ardoin v. Stine Lumber Co.*, 298 F. Supp. 2d 422, 425 (W.D. La. 2003) (holding that the addition of a new plaintiff did not restart the one-year limit for removal); *Sasser*, 126 F. Supp. 2d at 1335–37 (same); *Howell v. St. Paul Fire & Marine Ins. Co.*, 955 F. Supp. 660, 662–63 (M.D. La. 1997) (same); *Lytle v. Lytle*, 982 F. Supp. 671, 674 (E.D. Mo. 1997) (holding that the one-year limit prohibited third-party defendants from removing the case even though the third-party defendants were brought into the action more than one year after the filing of the original complaint); *Norman v. Sundance Spas, Inc.*, 844 F. Supp. 355, 357 (W.D. Ky. 1994) (applying federal law and concluding that a later-amended complaint that adds a new defendant does not commence a new action); *accord Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1316 (10th Cir. 2007) ("[I]ntervening plaintiffs asserting identical causes of action against the same defendants as named in the original complaint [does not] change the commencement date of the suit for purposes of CAFA or any other jurisdictional statute"). Courts interpreting identical or similar phrases in other jurisdictional contexts have likewise come to similar conclusions. For example, the First Circuit interpreted the phrase "[n]o action may be commenced" in the Clean Water Act to conclude that an intervening party "did not 'commence' [an] action," but only "intervened in an existing action." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1296 n.27 (1st Cir. 1996). Likewise, in interpreting the phrase "any civil action commenced" on or after the effective date of the Class Action Fairness Act, the Tenth Circuit concluded that a federal plaintiffs' intervention did not commence a new "action." *Weber*, 506 F.3d at 1316.

There is no doubt that the text is clear in this case. But for those readers who find congressional purpose and legislative history to be persuasive supplements to a textual

interpretation, these sources of information also support the Court's interpretation of § 1446(b). Before Congress added the one-year time limit in 1988, the addition, substitution, and elimination of parties as a state court action progressed towards trial could create diversity and thus permit removal "late in the proceedings." H.R. Rep. No. 100-889, at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032–33. For example, if a plaintiff settled with the only non-diverse defendant on the night before trial, the remaining defendants could remove the case even if the action had been pending for years. *Id.* To avoid this "substantial delay and disruption," Congress added the one-year time limit as a "modest curtailment" of removal based on diversity jurisdiction. *Id.*; *see also Court Reform and Access to Justice Act: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary*, 100th Cong. 97 (1987) (prepared testimony of Hon. Elmo B. Hunter, Chairperson of the Comm. on Court Admin. of the Judicial Conference). If later-added defendants got their own one-year time limit for removal, this would "effectively extend the opportunity for removal to months, indeed even years, later when new parties might be added or subtracted." *U.S. Airways, Inc.*, 340 F. Supp. 2d at 706. This conclusion would contradict Congress's intent in creating the one-year removal limit as a rule-like means of "reducing the opportunity for removal after substantial progress has been made in state court." H.R. Rep. No. 889, at 72.

Lastly, statutes conferring removal jurisdiction must be "construed strictly because removal jurisdiction encroaches on a state court's jurisdiction." *Brierly*, 184 F.3d at 534 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). And there is a presumption against federal jurisdiction that the party invoking jurisdiction—here, State Farm—has the burden to overcome. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994). Therefore, strict construction of § 1446(b) as well as the presumption against this Court's jurisdiction erases any lingering doubts as to whether intervening commences a new civil action.

State Farm does not discuss or cite § 1446(b), let alone any cases interpreting the phrase "commencement of the action." Instead, State Farm quickly proclaims, without any supporting authority, that it "cannot be bound under a one year period for which [it] was completely unaware of any action arising from the bus accident." Corr. Resp., No. 11-158, R. 9 at 11; No. 11-159, R. 7 at 11. In essence, State Farm argues that starting the one-year clock when State Farm was not yet a party to the action is unfair. But, fair or not, Congress chose an administratively clear rule to curtail "the opportunity for removal after substantial progress has been made in state court." *Staggs v. Union Pac. R.R. Co.*, No. 1:10CV00096, 2011 WL 335671, at *3 (E.D. Ark. Jan. 28, 2011) (quoting H.R. Rep. No. 100-889, at 72). And if Congress wants to remedy any injustices created by this clear rule, it has already demonstrated that it has the capacity to do so. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 § 103 (Dec. 7, 2011) (creating an exception to § 1446(b)'s one-year limit, effective for cases removed or commenced after January 6, 2012, if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action").

Having concluded that the phrase "commencement of the action" refers to the filing of the original complaint, it is clear that State Farm waited too long to file its notices of removal. The original complaint was filed in Pike Circuit Court on September 24, 2010. State Farm removed these cases on October 12, 2011—nearly three weeks too late. Therefore, State Farm must defend itself in state court.

**II. The plaintiffs' other arguments for remand**

In their motions to remand, the plaintiffs make several other arguments. First, they argue that State Farm removed these cases more than thirty days after the cases first became removable, and thus removal is procedurally barred by § 1446(b). Second, the plaintiffs argue that there is no complete diversity because the non-diverse defendants Slusher and Belcher Trucking have not yet been formally dismissed by the state court. *See* Mot. to Remand, No. 11-158, R. 5 at 2–5; No. 11-159, R. 5 at 2–5. Because the one-year time limit in § 1446(b) mandates remand of these cases, however, the Court will not opine on the merits of the plaintiffs' other arguments.

**CONCLUSION**

Accordingly, it is **ORDERED** as follows:

(1) The plaintiffs' motion to remand in *Easterling v. State Farm*, No. 11-158, R. 4, is **GRANTED**. This case is **REMANDED** to the Pike Circuit Court and **STRICKEN** from the Court's active docket.

(2) The plaintiffs' motion to remand in *Breeding v. State Farm*, No. 11-159, R. 4, is **GRANTED**. This case is **REMANDED** to the Pike Circuit Court and **STRICKEN** from the Court's active docket.

This the 23rd day of December, 2011.



Signed By:
*Amul R. Thapar* AT
United States District Judge